FILED

2011 SEP 30 PM 4:17

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

| | |
|---|---|
| PABLO CAHUEC-CASTRO; MYRA LETICIA JUAREZ; OTTONIEL PEREZ-PIOX; and MARIA del ROSARIO OSORIO, individually, and on behalf of her minor child, W.D.O., <br><br> *Plaintiffs,* <br><br> *v.* <br><br> LEE CLARK WORSHAM, Deportation Officer, United States Immigration and Customs Enforcement ("ICE") Nashville Fugitive Operations Team ("NVLFOT"); LEE GAINES, Supervisory Detention and Deportation Officer, ICE NVLFOT; JOHN DOES 1-5, Deportation Officers, ICE NVLFOT; GREYSTAR REAL ESTATE PARTNERS, LLC; TRITEX REAL ESTATE ADVISORS, INC.; and SCOTT JARVIS, <br><br> *Defendants.* | Case No. <br><br> **Jury Demand** |

## COMPLAINT

Come now the Plaintiffs, by and through their undersigned attorney, and for their causes of action would state and allege as follows:

### INTRODUCTION

1.      This is a civil rights action raising constitutional claims under the Fourth and Fifth Amendments to the United States Constitution against federal immigration officers pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 401 U.S. 388 (1971), and federal- and state-law claims against private actors for their participation in the warrantless and unlawful entry of Plaintiffs' home, the unlawful search and seizure of Plaintiffs, their residence, and their possessions, and for the illegal arrest of Plaintiffs Pablo Cahuec-Castro and Ottoniel Perez-Piox.

1

## JURISDICTION AND VENUE

2.      This action arises under the Constitution and laws of the United States, including the Fourth and Fifth Amendments to the U.S. Constitution, 42 U.S.C. § 1985, and 8 U.S.C. § 1357. This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. This action also raises claims arising under Tennessee statutory and common law. Supplemental jurisdiction over Plaintiffs' state claims lies pursuant to 28 U.S.C. § 1367. Plaintiffs seek declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

3.      Venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(e)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within this District

## PARTIES

### A.  *Plaintiffs*

4.      Plaintiff **Pablo Cahuec-Castro** ("Cahuec") is a Davidson County resident of Hispanic ethnicity and appearance. He was a resident of Clairmont Apartment K-29 in Nashville, Tennessee prior to his warrantless arrest by ICE inside his home on October 1, 2010.

5.      Plaintiff **Myra Leticia Juarez** ("Juarez") is a Davidson County resident of Hispanic ethnicity and appearance. She was a resident of Clairmont Apartment K-29 in Nashville, Tennessee prior to ICE's warrantless entry into her home without consent or exigency on October 1, 2010.

6.      Plaintiff **Ottoniel Perez-Piox** ("Perez") is presently residing in Guatemala. He is a 30 year-old man of Hispanic ethnicity and appearance. He was a resident of Clairmont Apartment K-29 in Nashville, Tennessee prior to his warrantless arrest by ICE inside his home on October 1, 2010.

2

7.     Plaintiff **Maria del Rosario Osorio** ("Osorio") is a Davidson County Resident of Hispanic ethnicity and appearance. She was a resident of Clairmont Apartment K-29 in Nashville, Tennessee prior to ICE's warrantless entry into her home without consent or exigency on October 1, 2010. Plaintiff Roe brings this action on behalf of herself and her minor child, W.D.O., who was less than 3 months old at the time of the events giving rise to this Complaint, and who was 26 months old at the time of this action.

8.     Plaintiff **W.D.O.** is a minor child residing in Davidson County. He is the child of Plaintiffs Perez and Osorio. He was present in Apartment K-29 on the morning of October 1, 2010.

### B. ICE Defendants

9.     Defendant **Lee C. Worsham** was at all times relevant to this action a Deportation Officer with the United States Immigration and Customs Enforcement (ICE) Nashville Fugitive Operations Team (NVLFOT). He was responsible for carrying out NVLFOT immigration law enforcement operations and polices, practices, and/or customs of ICE's National Fugitive Operations Program ("NFOP") at all times during this complaint. He personally arrested Plaintiffs Cahuec and Perez. Defendant Worsham is sued in his personal capacity. At all times relevant to this Complaint, Defendant Worsham acted under color of federal law.

10.     Defendant **Lee Gaines** was at all times relevant to this action a Supervisory Detention and Deportation Officer of NVLFOT. He was responsible for carrying out and supervising NVLFOT immigration law enforcement operations and the policies, practices, and/or customs of the Fugitive Operations Team based in Nashville, Tennessee. As the Nashville Fugitive Operations Team's immediate supervisor, he was at all times relevant to this action responsible for monitoring and supervising subordinate ICE agents, including their activities in

3

the field. Defendant Gaines personally reviewed, approved and signed the ICE processing paperwork Defendant Worsham completed after his illegal arrest of Plaintiff Cahuec-Castro. Upon information and belief, Defendant Gaines also personally reviewed, approved and signed the ICE processing paperwork Defendant Worsham completed after his illegal arrest of Plaintiff Perez. Defendant Gaines is sued in his personal capacity. At all times relevant to this Complaint, Defendant Gaines acted under color of federal law.

11.    Defendants **John Doe ICE Agents 1-5** were at all times relevant to this action deportation officers or agents of ICE. They were responsible for carrying out ICE immigration law enforcement operations and polices, practices, and/or customs at all times during this complaint. Upon information and belief, Defendants Doe ICE Agents 1-5 were present with Defendant Worsham at the Clairmont Apartments on October 1, 2010. Does 1-5 are sued in their individual capacities. Upon information and belief, at all times relevant to this Complaint, Defendants Does 1-5 acted under color of federal law.

12.    Plaintiffs are presently unaware of the true names and positions held by Defendants John Doe ICE Agents 1-5. Plaintiffs therefore sue those defendants using fictitious names. Plaintiffs will amend their Complaint to state the true name and position of each defendant once this information is ascertained. Pending such amendment, Plaintiffs allege as follows:

   a.    Upon information and belief, one of the John Doe ICE Agents present at the Clairmont Apartment complex on October 1, 2010 is ICE NVLFOT Deportation Officer **Bradley Epley**;[1]

---

[1] Epley is currently being sued along with Defendant Worsham in a separate action before this Court, and upon information and belief, Epley and Worsham frequently conduct NVLFOT operations together. *See Tapia-Tovar v. Epley*, No. 3:11-cv-00102 (M.D. Tenn. filed Feb. 4, 2011).

4

b. Upon information and belief, one of the John Doe ICE Agents present at the Clairmont Apartment complex on October 1, 2010 is ICE NVLOT Deportation Officer **Eric H. Lim**;

c. Upon information and belief, one of the John Doe ICE Agents present at the Clairmont Apartment complex on October 1, 2010 is ICE NVLFOT Deportation Officer **Brian Abrahamson**;

d. Upon information and belief, one of the John Doe ICE Agents present at the Clairmont Apartment complex on October 1, 2010 is ICE Nashville Immigration Enforcement Agent **Daniel Hastings**.

### C. Private Party Defendants

13.      Defendant **Greystar Real Estate Partners, LLC** ("Greystar") is a limited liability corporation headquartered in Charleston, South Carolina. Greystar's Founder and Chief Executive Officer, Mr. Bob Faith, is the former Secretary of Commerce for the State of South Carolina. Greystar specializes in investment, management and development of multifamily residential real estate ventures. Since 2001, Greystar has surpassed $1.4 billion in investments. At all times relevant to this action, Greystar managed the Clairmont Apartment complex at 1019 Patricia Drive in Nashville, Tennessee. Greystar's management responsibilities at Clairmont included the hiring, training, supervision, and payment of on-site leasing, management, security and maintenance staff.

14.      Defendant **TriTex Real Estate Advisors, Inc.** ("TriTex") is a Delaware corporation headquartered in Atlanta, Georgia. TriTex purchased the Clairmont Apartments from Fannie Mae in 2010 for $6,499,288.61. TriTex replaced the Clairmont Apartment complex's

5

previous management company with Greystar roughly the same time as it purchased the property.

15.     Defendant **Scott Jarvis** ("Jarvis") was at all times relevant to this action the maintenance supervisor at the Clairmont Apartments. He was under the employment and supervision of Defendant Greystar, its agents and employees.

### FACTUAL ALLEGATIONS

#### A. Defendant Worsham's Illegal Entry Into Plaintiffs' Residence

16.     Before dawn on Friday, October 1, 2010, all Plaintiffs were inside their home at Apartment K-29 of the Clairmont Apartments when they heard a loud banging on the front door.

17.     Plaintiff Juarez, who was in the kitchen cooking breakfast, went to see who was at the door. When she looked out a window, she saw no one.

18.     Defendants Worsham and Gaines have characterized this sequence of events as follows: "FOT officer's first attempt to establish contact with persons inside the residence was unsuccessful, as at least one individual was present inside the home, but refused to answer the door."

19.     After receiving no answer to his bangs on the door of Plaintiffs' residence and interpreting this response as a "refus[al] to answer the door," Defendant Worsham and Defendants John Doe ICE Agents 1-5 contacted Clairmont Apartments management and/or maintenance staff to obtain a key to Plaintiffs' apartment.

20.     At Defendant Worsham's request, Defendant Jarvis followed Defendant Worsham and the other Defendant ICE Agents back to Plaintiffs' apartment.

21.     Nearly half an hour later, around 7:00 a.m., Plaintiffs heard another series of loud bangs on the front door.

6

22.     This time, a man's voice yelled, in Spanish, "Abra la puerta o la tiramos abajo!" ("Open the door or we'll break it down!")

23.     After several more bangs, but before any of the Plaintiffs went to the door, Plaintiffs Cahuec and Juarez heard the sound of someone unlocking the front door from the outside.

24.     Once it was unlocked, the door swung open inside Plaintiffs' apartment until it stopped after catching a security latch that was attached and connected to both the door and the adjacent wall or door frame.

25.     Defendant Worsham put his foot inside Plaintiffs' home in the opening between the door frame and the door.

26.     Defendant Worsham attempted to push the door open farther, but the security latch prevented the door from opening completely and allowing Worsham to fully enter Plaintiffs' residence.

27.     Defendant Worsham demanded that Plaintiffs remove the security latch and allow him to complete his entry into the residence

28.     Plaintiffs refused to comply with Defendant Worsham's demand.

29.     Defendant Worsham became upset. He told Plaintiffs that if someone did not unhinge the security latch and let him enter immediately, he would break the door down and arrest every person inside.

30.     At the time, Defendant Worsham was wearing clothing that had lettering reading "POLICE-ICE."

31.     Defendant Worsham was wearing a firearm that was visible to Plaintiffs.

7

32.     For several more minutes, Plaintiffs persisted in their refusal to remove the protective security latch and allow Defendant Worsham to fully enter their residence.

33.     Defendant Worsham got increasingly upset and repeated his demand that the residents unhinge the door's security latch to allow him inside.

34.     Alternating between English and Spanish, Defendant Worsham screamed, "Open the fucking door! If you don't, I'll break it down."

35.     Defendant Worsham also yelled to the Plaintiffs that he would "drag every one of you out one by one" if someone did not remove the security latch and let him fully inside the home.

36.     Defendant Worsham placed one hand on his pistol in view of Plaintiff Cahuec.

37.     Defendant Worsham's actions were intended to terrorize and intimidate Plaintiffs into removing the security latch on their door.

38.     Defendant Worsham only took these actions because Plaintiffs had clearly and unambiguously exercised their right to refuse Defendant Worsham entry into their home.

39.     Afraid that he, his wife or his roommates might be shot by the government agent who had unlocked and opened the front door, put one foot inside his home, and screamed violent, profane threats about the consequences for failure to comply with the government's demands, Plaintiff Cahuec unlatched the security latch from the door and stepped backward into the residence.

40.     Plaintiff Cahuec did not remove the latch on his open front door voluntarily. He did so under extreme duress and coercion that was the foreseeable and direct result of Defendant Worsham's actions.

8

41.     Defendants Worsham and Gaines have characterized the preceding sequence of events as follows: "FOT officers returned a short time later with an employee of the apartment complex and were able to establish contact with multiple residents of the apartment. After several minutes Pablo Cahuec-Castro granted consent to enter and search the residence for the intended target."

42.     Neither Defendant Worsham nor Defendants John Doe ICE Agents 1-5 presented a judicial or administrative search or arrest warrant allowing them to enter Plaintiffs' apartment, or any other Clairmont Apartments unit on October 1, 2010.

43.     No Defendant ever indicated to any Plaintiff that any administrative or judicial warrant to enter the home existed that would give ICE agents a right to enter the residence.

### B.  *Defendant ICE Agents' Illegal Seizure Of Plaintiffs Inside Their Home*

44.     After Plaintiff Cahuec removed the home's security latch, Defendant Worsham immediately stepped inside Plaintiffs' home.

45.     With his hand on his gun, Defendant Worsham said, in Spanish, "Por que usted no abrio la puerta!" ("Why didn't you open the door!") His cheeks were red and he was visibly enraged.

46.     By this time, Plaintiff Juarez was crying, as was Plaintiff W.D.O.

47.     Defendant Worsham asked Plaintiff Juarez why she was crying.

48.     She did not answer because she was terrified.

49.     Defendant Worsham then yelled to Plaintiff Juarez, while looking at Plaintiff Cahuec, "Don't cry. I'm not gonna kill him. I'm only gonna arrest him because he didn't open the door."

9

50.     Once Defendant Worsham entered Apartment K-29, none of the Plaintiffs believed they were free to terminate their encounter with Defendant Worsham, to ask him to leave their home, or to refuse to answer his questions.

## C. *Defendant ICE Agents' Unlawful Search of Plaintiffs' Home and Persons*

51.     Defendant ICE Agents searched Plaintiffs' residence without their consent, a warrant, or exigent circumstances.

52.     Defendant ICE Agents did not find their intended target.

53.     Rather than leaving the apartment, Defendant Worsham interrogated Plaintiffs regarding a man he claimed was an ICE "fugitive."

54.     Defendant Worsham showed Plaintiffs a photograph of the purported target – a man allegedly named Delfino Piox-Tecu.

55.     None of the Plaintiffs is a friend or relative of Mr. Piox-Tecu.

56.     As Defendant Worsham conducted this custodial interrogation, Mr. Cahuec's cellular phone rang.

57.     Defendant Worsham snatched Mr. Cahuec's phone out of his hand.

58.     After ending the original call that prompted the phone to ring, Defendant Worsham conducted a visual search of the phone's "phonebook."

59.     In the cellular phone's "phonebook," Defendant Worsham found an entry for someone named "Delfino."

60.     At that point, Mr. Cahuec remembered that he had previously ridden to church with the man connected to the entry "Delfino."

61.     Defendant Worsham accused Plaintiff Cahuec of lying to ICE.

10

62.    Defendant Worsham told Plaintiff Cahuec he was going to be arrested because he "lied."

63.    Without explanation, Defendant Worsham also arrested Plaintiff Perez.

64.    Defendants Worsham and Gaines have characterized this sequence of events as follows: "The intended target was not located, and Cahuec, along with other residents were [sic] interviewed. Cahuec repeatedly made false statements to FOT officers concerning information related to the fugitives [sic] whereabouts, and continually stated he did not know the fugitive. Investigation efforts located contact information for the fugitive directly associated with Cahuec, and aiding the fugitive [sic]."

65.    When Plaintiffs Cahuec and Perez were escorted from their home following their arrest, Defendant Jarvis was standing outside their door with other ICE agents.

66.    Defendant Jarvis, acting within the scope of authority as Clairmont Apartments maintenance supervisor, either opened the Plaintiff's apartment door using his maintenance copy of the key to the apartment, or allowed Defendant ICE agents to do so.

### D. NVLFOT's Documented Pattern and Practice of Illegal Home Entries

67.    Plaintiffs' experience is far from unique. Fugitive Operations Teams in Nashville and across the country have a longstanding, well-documented record of conducting warrantless invasions into homes using the pretext of searching for a dangerous criminal alien, then making solely collateral, often race-based arrests of people they are not tasked with searching out and apprehending.

68.    FOTs in Nashville rarely use administrative or judicial warrants to conduct enforcement activities unless they happen to be working in conjunction with a local law

11

enforcement agency that independently sought a warrant. Instead, their pattern, practice and custom is to single out a home or area and conduct "knock-and-talks."

69.     Rather than obtaining an administrative or judicial warrant for their intended targets, NVLFOT officers regularly prepare a "Fugitive Operations Worksheet" in advance of conducting a knock-and-talk.

70.     In contrast to an administrative or judicial warrant, Fugitive Operations Worksheets require no finding of probable cause or reasonable suspicion before targeted a home.

71.     Fugitive Operations Worksheets require only minimal, cursory supervision by Defendant Gaines, and they provide no mechanism for accountability regarding the targets sought versus the subjects actually arrested.

72.     As a direct consequence of the failure of NVLFOT officers and supervisors to comply with the warrant requirements of the Fourth Amendment and ICE's governing statutes and regulations, NVLFOT regularly targets the wrong home based on outdated or incorrect information. Regardless, NVLFOT officers arrest, and their supervisor, Defendant Gaines, agrees to process, individuals who are collateral to the initial operation and were not originally targeted.

73.     The entry, searches and seizures that follow from these NVLFOT's knock-and-talk operations are almost always reported by NVLFOT officers as being consensual.

74.     In reality, FOT officers have an extensive history of engaging in a pattern, practice and custom that involves forcing entry or gaining consent through threats and coercion. Once inside private homes, FOT agents gather subjects into a central area such as a living room and then search the entire home without warrant, consent, or exigent circumstances. Then

12

NVLFOT officers routinely administratively arrest residents and take them to ICE administrative offices without probable cause or reasonable suspicion.

75.     The unlawful tactic Defendants Worsham and Does 1-5 employed in this case of enlisting apartment managers and staff to gain warrantless entry into private home where the residents previously refused ICE entry is also one that has been repeated by NVLOT teams at other apartment complexes in the Nashville metropolitan area.

76.     Describing the conduct of FOTs elsewhere in the country, a senior local law enforcement official has stated, "In conversations with representatives of ICE, it was reported to me that in all 131 homes they asked for and received consent to enter . . . In my 29 years of police work, I have executed countless warrants and have sought consent to enter countless homes. ICE's claim that they received 100% compliance with their requests to enter is not credible under even the best of circumstances."

77.     Supervisor Gaines has utterly failed to control the abusive and sometimes violent practices of Defendants Worsham and John Doe ICE Agents 1-5, and to put in place practices and policies that would offer accountability when such abuses occur.

### FIRST CLAIM FOR RELIEF
#### FOURTH AMENDMENT
#### (*Bivens*: All Plaintiffs Against ICE Defendant Worsham and John Does 1-5)
#### (Illegal Entry Into Plaintiffs' Home)

78.     The foregoing paragraphs are incorporated by reference.

79.     Plaintiffs have a constitutionally protected right under the Fourth Amendment to the United States Constitution to be free from unreasonable search and seizure. Unlawful invasion of the home is the chief evil the Fourth Amendment seeks to prevent.

80.     Under clearly established Fourth Amendment law, any unlawful invasion of the home, even if only by a fraction of an inch, is too much.

13

81.     Defendants Worsham, and John Doe ICE Agents violated Plaintiffs' Fourth Amendment rights when they conspired with Defendant Jarvis to circumvent what they clearly believed was a refusal by Plaintiffs to allow entry into the K-29 residence.

82.     By obtaining a key and opening the door to Plaintiffs' residence without warrant, exigency, or consent, Defendant ICE Agents violated Plaintiffs' constitutional right to be secure in their home and free from unreasonable searches and seizures.

83.     The illegality of ICE Defendants' entry into Plaintiffs' residence taints any reasonable suspicion or probable cause for ICE Defendants' subsequent search, seizure, and administrative arrests inside Plaintiffs' home.

84.     As a result of these Defendants' egregious and unlawful actions, the Plaintiffs have suffered damages, including, but not limited to, violations of their constitutional rights, loss of liberty, and emotional distress.

85.     On October 1, 2010, Plaintiffs had a clearly established of Constitutional right to be free from warrantless, nonconsensual entry into their home by government agents. *See e.g.*, *Payton v. New York*, 445 U.S. 573, 587 (1980); *United States v. Morgan*, 743 F.2d 1158, 1161 (6th Cir. 1984) (explaining "the Fourth Amendment draws a firm line at the entrance of the house. Absent exigent circumstances, that threshold may not be reasonably crossed without a warrant."); *Kyllo v. United States*, 533 U.S. 27, 37 (2001) ("Any physical invasion of the structure of the home, 'by even a fraction of an inch,' is too much."). Defendants violated this clearly established right by opening Plaintiff's front door without warrant, exigency, or consent.

86.     On October 1, 2010, it was clearly established as a matter of Sixth Circuit law that a law enforcement officer's representation that a fugitive might be on the premises of a targeted apartment does not constitute an emergency sufficient to permit the landlord to assist the law

14

enforcement agent in making warrantless, nonconsensual entry into a private apartment home. Defendants violated this clearly established right by conspiring with Defendant Jarvis to obtain entry into Plaintiffs' apartment using the management's copy of a key.

87.     On October 1, 2010, it was clearly established that voluntary consent to enter a private residence must be untainted by duress, coercion, or trickery. Defendants violated this clearly established right by (a) opening Plaintiffs' front door without consent after acknowledging consent had been refused; and (b) threatening and intimidating Plaintiffs until Plaintiff Cahuec relented and unhooked the apartment's security latch, despite Plaintiffs' unequivocal refusal to remove the security latch for what Defendant Worsham admits was "several minutes."

## SECOND CLAIM FOR RELIEF
### FOURTH AMENDMENT
### (*Bivens*: All Plaintiffs Against ICE Defendant Worsham and John Does 1-5)
### (Unreasonable Search of Plaintiffs' Home)

88.     The foregoing paragraphs are incorporated by reference.

89.     Plaintiffs have a clearly established, constitutionally protected right to be secure in their homes and free from unreasonable searches by government agents.

90.     Defendant Worsham and Defendant ICE Agent Does 1-5 violated this clearly established right by searching Plaintiffs' home without warrant, consent or exigency after illegally entering their home in violation of the Fourth Amendment.

91.     Defendants' actions cannot be justified through the 'protective sweep' exception to the Fourth Amendment's warrant requirement because, by Defendants' own admissions, no arrests had been made at the time agents searched Plaintiffs' home, and because Defendants' presence inside was itself unlawful and illegitimate.

15

92.     As a result of these Defendants' egregious and unlawful actions, the Plaintiffs

have suffered damages, including, but not limited to, violations of their constitutional rights, loss

of liberty, and emotional distress.

### THIRD CLAIM FOR RELIEF
#### FOURTH AMENDMENT
#### (*Bivens*: Plaintiff Cahuec Against Defendant Worsham)
#### (Unreasonable Search of Plaintiff Cahuec's Personal Effects)

93.     The foregoing paragraphs are incorporated by reference.

94.     Plaintiff Cahuec had a clearly established constitutional right to be secure in his

person and effects and to be free from unreasonable search and seizure.

95.     Defendant Worsham violated Plaintiff Cahuec's clearly established right by

seizing Plaintiff's cellular phone and subsequently searching it without probable cause or

reasonable suspicion.

96.     Defendant Worsham's illegal actions served as his only justification for

administratively arresting Plaintiff Cahuec.

97.     As a result of these Defendant Worsham's egregious and unlawful actions,

Plaintiff Cahuec suffered damages, including, but not limited to, violations of his constitutional

rights, loss of liberty, and emotional distress.

### FOURTH CLAIM FOR RELIEF
#### FOURTH AMENDMENT
#### (*Bivens*: All Plaintiffs Against Defendants Worsham and John Does 1-5)
#### (Unlawful Seizure)

98.     The foregoing paragraphs are incorporated by reference.

99.     All Plaintiffs had a clearly established constitutional right to be secure in their

persons and free from unreasonable seizure.

16

100.     Defendants violated that clearly established right by entering Plaintiffs' home without knowing and voluntary consent, and by unambiguously signaling to Plaintiffs that they were not free to leave, or to end the encounter with Defendants.

101.     Because Defendant Worsham and his ICE counterparts did not know who any of the Plaintiffs were before he and other ICE Agents entered their residence without warrant or consent, no conceivable reasonable suspicion or probable cause existed to effectuate the immediate seizure that took place upon Defendants' entry.

102.     As a result of these Defendants' egregious and unlawful actions, the Plaintiffs have suffered damages, including, but not limited to, violations of their constitutional rights, loss of liberty, and emotional distress.

### FIFTH CLAIM FOR RELIEF
#### FOURTH AMENDMENT
#### (*Bivens*: Plaintiffs Cahuec and Perez Against Defendants Worsham and John Does 1-5)
#### (Unlawful Seizure)

103.     The foregoing paragraphs are incorporated by reference.

104.     Plaintiffs Cahuec and Perez had a clearly established constitutional right under the Fourth Amendment to be free from arrest without probable cause.

105.     Defendants violated Plaintiffs' clearly established constitutional rights by arresting them after an illegal entry into their residence, unlawful and involuntary custodial interrogation, unlawful search and seizure of Plaintiff Cahuec's cellular phone, and an unlawful search of Plaintiffs' home.

106.     The only conceivable basis upon which Defendants could have arrested Plaintiffs Cahuec and Perez was information gleaned following Defendants' unlawful entry into their home.

17

107.    Any evidence regarding plaintiffs' compliance with the Immigration and
Nationality Act or their knowledge of ICE's purported fugitive Defendants may have gathered
after their forced, nonconsensual entry into Plaintiffs' private residence cannot serve as a basis
for a lawful arrest.

108.    Consequently, Defendant Worsham and ICE Does 1-5 are liable to Plaintiffs
Cahuec and Perez for administratively arresting them in violation of their clearly established
Fourth Amendment rights.

109.    As a result of these Defendants' egregious and unlawful actions, the Plaintiffs
have suffered damages, including, but not limited to, violations of their constitutional rights, loss
of liberty, and emotional distress.

### SIXTH CLAIM FOR RELIEF
#### FIFTH AMENDMENT
**(*Bivens*: All Plaintiffs Against Defendants Worsham and John Does 1-5)**
**(Substantive Due Process)**

110.    The foregoing paragraphs are incorporated by reference.

111.    Plaintiffs enjoyed a clearly established, constitutionally protected right under the
Fifth Amendment to the United States Constitution to be free from abusive government conduct
that shocks the conscience and violates their fundamental rights to fairness and due process of
law.

112.    Defendants deprived Plaintiffs of their liberty in a manner that was without due
process of law and was fundamentally unfair in the totality of the circumstances, in violation of
the Plaintiffs' rights under the Fifth Amendment to the United States Constitution.

113.    Defendants' premeditated, forced entry of Plaintiffs' private home, reprehensible
disregard for the basic protections of law, and violative intrusion of private spaces constitutes an

abuse of federal authority that shocks the conscience and offends even the most minimal standards of acceptable behavior.

114. As a result of Defendants' actions, Plaintiffs suffered damages, including but not limited to violations of their constitutional rights, loss of liberty, and emotional distress.

**SEVENTH CLAIM FOR RELIEF**
**FIFTH AMENDMENT**
**(*Bivens*: All Plaintiffs Against All ICE Defendants)**
**(Procedural Due Process)**

115. The foregoing allegations are incorporated by reference.

116. Plaintiffs have a constitutionally protected right to be free from deprivation of their liberty without due process of law. This right includes the right to be free from unlawful and abusive enforcement activities in violation of their Constitutional rights, ICE's governing statutes, and the regulations DHS has promulgated to protect Plaintiffs fundamental constitutional rights.

117. Defendants intentionally, knowingly, and/or recklessly violated ICE's statutory, regulatory, and sub-regulatory rules governing the conduct of immigration enforcement activities, the entry and search of private homes, and arrests of subjects encountered.

118. These violations include exceeding the power and authority Congress delegated to ICE officers under 8 U.S.C. § 1357.

119. Defendants also violated 8 C.F.R. § 287.8(f)(2) when they entered Plaintiffs' home without warrant, consent, or exigency.

120. Defendants violated 8 C.F.R. § 287.8(b)(2) when they arrested Plaintiffs Cahuec and Perez without probable cause or reasonable suspicion.

121. As a result of Defendants' actions, Plaintiffs suffered damages, including but not limited to violations of their constitutional rights, loss of liberty, and emotional distress.

19

## EIGHTH CLAIM FOR RELIEF
### FOURTH AND FIFTH AMENDMENTS
### (*Bivens*: All Plaintiffs Agents Defendant Gaines)
### (Supervisory Liability)

122.    The foregoing allegations are incorporated by reference.

123.    Defendant Gaines supervised Defendant Worsham and Defendant Does 1-5 in their dealings with all subjects encountered at the Clairmont Apartments on October 1, 2010.

124.    Defendant Gaines had both actual and constructive knowledge of his subordinates' activities, and the pervasive and unreasonable risk of constitutional injury these activities posed to persons like the Plaintiffs.

125.    Defendant Gaines's response to that knowledge was so inadequate as to demonstrate deliberate indifference or tacit authorization of the constitutionally offensive practices engaged in by Defendants Worsham and Does 1-5.

126.    Defendant Gaines's deliberate indifference and/or tacit authorization of the unconstitutional practices of his superiors represents an affirmative causal link between Gaines's inaction and the constitutional injuries suffered by the Plaintiffs.

127.    Specifically, Defendant Gaines personally participated in the other ICE Defendants' egregious violations of Plaintiffs' clearly established constitutional rights. Defendant Gaines reviewed and approved Defendant Worsham's after-action report, including the language that clearly demonstrates Defendant Worsham gained entry into Plaintiffs' residence only after he enlisted the assistance of Clairmont management staff upon being refused entry initially.

128.    In addition, Defendant Gaines approved the continued custody of Plaintiffs Cahuec and Perez even after reviewing Defendant Worsham's constitutionally deficient report of Plaintiffs' apprehension.

20

129.     More broadly, Defendant Gaines had actual or constructive knowledge of the widespread practice of his FOT to make "dynamic entries" into homes during "knock-and-talk" operations, and all practices described in Section D of Plaintiffs' factual allegations *supra* (¶¶ 67 – 76).

## NINTH CLAIM FOR RELIEF
### NEGLIGENCE
**(All Plaintiffs Against Defendants Greystar, TriTex and Jarvis)**

130.     The foregoing paragraphs are incorporated by reference.

131.     Defendants, their agents and assigns owed a common law duty of care to Plaintiffs to ensure their quiet use and enjoyment of their apartment residence.

132.     This duty included the duty to afford Plaintiffs – as Apartment K-29's tenants – exclusive control of their residence during the lease period.

133.     Defendant Jarvis, acting within the scope of his authority as Greystar's maintenance supervisor for the Clairmont Apartment complex, breached Defendants' duty of care by using a key to open Plaintiffs' door.

134.     Defendants suffered nominal and dignitary damages as well as severe emotional distress as an actual and proximate cause of Defendants' breach.

135.     Consequently, Defendants are liable to all Plaintiffs in negligence.

## TENTH CLAIM FOR RELIEF
### TENNESSEE UNIFORM RESIDENTIAL LANDLORD-TENANT ACT
**(All Plaintiffs Against Defendants Greystar, TriTex and Jarvis)**
**(Unlawful Non-Consensual Entry)**

136.     The foregoing paragraphs are incorporated by reference.

137.     The Clairmont Apartment complex is located within Davidson County. Pursuant to Tennessee law, landlord-tenant relations therein are governed by the Tennessee Uniform Residential Landlord Tenant Act ("TURLTA"). Tenn. Code Ann. §§ 66-28-101, *et seq.*

21

138.     Tenn. Code Ann. § 66-28-154 provides a remedy of damages and attorney's fees whenever "the landlord makes an unlawful entry" into a tenant's home.

139.     Under Tenn. Code Ann. § 66-28-403(b), a "landlord may enter the dwelling unit without consent of the tenant in case of emergency. 'Emergency' means a sudden, generally unexpected occurrence or set of circumstances demanding immediate action."

140.     The Sixth Circuit made clear in *United States v. Hardin*, 539 F.3d 404 (6th Cir. 2009) that a law enforcement officer's representation to a landlord that a fugitive felon may be in a certain property is not an "emergency" that would allow a landlord's nonconsensual entry into a dwelling unit under T.C.A. § 66-28-403(b).

141.     Defendants violated the TURLTA by providing ICE agents the key to Plaintiffs' residence after ICE agents informed Defendants that Plaintiffs had refused to open the door.

142.     Plaintiffs have suffered damages and incurred attorney's fees as an actual and proximate cause of Defendants' violation.

143.     Consequently, Defendants are liable to Plaintiffs for money damages and attorney's fees.

## ELEVENTH CLAIM FOR RELIEF
### INVASION OF PRIVACY - INTRUSION UPON SECLUSION
### (All Plaintiffs Against Defendants Greystar, TriTex and Jarvis)

144.     The foregoing paragraphs are incorporated by reference.

145.     Plaintiffs had a reasonable expectation of privacy inside their residence.

146.     Defendants intentionally invaded that privacy and intruded into Plaintiffs' private space by using a key or allowing ICE to use a maintenance supervisor's key in order to enter Plaintiffs' home without consent.

22

147. Any such intrusion into a private home would be highly offensive to a reasonable person.

148. As an actual and proximate cause of Defendants' intention intrusion upon Plaintiffs' seclusion inside their residence, Plaintiffs suffered damages.

149. Defendants are thus liability in tort for Defendant Jarvis's intentional invasion of Plaintiffs' privacy.

## TWELFTH CLAIM FOR RELIEF
### CONSPIRACY TO DEPRIVE FEDERALLY-PROTECTED CIVIL RIGHTS 42 U.S.C. § 1985
### (All Plaintiffs Against Defendants Greystar, TriTex, and Jarvis)

150. The foregoing paragraphs are hereby incorporated by reference.

151. Defendant Jarvis, acting within the scope of his authority as a Greystar maintenance supervisor, conspired with Defendant Greystar's on-site management personnel and Defendants Worsham and Does 1-5 to violate Plaintiffs federally-protected constitutional right to be free from unreasonable invasion of their home.

152. This conspiracy was based, in whole or in part, on an unlawful intent to deprive Plaintiffs of their federally protected civil rights due to their perceived (a) race; (b) ethnicity; and/or (c) national origin.

153. Specifically, Defendants Worsham and Jarvis conspired to negate Plaintiffs' entirely lawful refusal to answer Defendant Worsham's bangs on their door by using a spare key to open the door.

154. Defendants Jarvis and Worsham succeeded in their conspiracy to deprive Plaintiffs for their federally protected rights to be secure in their homes and possessions, and to withhold consent to a government agent seeking to make warrantless entry into their private residence.

23

## THIRTEENTH CLAIM FOR RELIEF
### FOURTH AMENDMENT
**(All Plaintiffs Against Defendants Greystar, TriTex, and Jarvis)**

155. The foregoing paragraphs are incorporated by reference.

156. Defendant Jarvis, acting within the scope of his authority as the Clairmont Apartments maintenance supervisor, was acting under color of federal law when he conspired with the federal immigration officer Defendants to force entry into Plaintiffs' residence, Defendants Jarvis, Greystar, and TriTex violated Plaintiffs' Fourth Amendment right to be free from unreasonable search and seizure.

157. Consequently, Defendants are liable for Damages Plaintiffs suffered as a result of these Constitutional violations.

## PRAYER FOR RELIEF

**WHEREFORE,** premises considered, Plaintiffs pray:

1. That process issue to the Defendants and that they be required to answer in the time allowed by law.

2. That a declaratory judgment be rendered in favor of the Plaintiffs as to all Causes of Action;

3. That Plaintiffs be awarded those nominal and compensatory damages to which it may appear they are entitled by the proof submitted in this cause for their physical and mental pain and suffering, both past and future; loss of enjoyment of life; and medical and psychological expenses, both past and future.

4. That Plaintiffs be awarded punitive damages against the Defendants, insomuch as Defendants' actions shock the conscience, were in bad faith, and transgress the most fundamental notions of decency and the rule of law.

24

5.     That Plaintiffs be awarded reasonable expenses in this litigation, including

reasonable attorney's fees and costs under all applicable statutes.

6.     That Plaintiffs receive any other further and general relief to which it may appear

they are entitled.

> Respectfully submitted,
>
> *Elliott Ozment*
>
> Elliott Ozment, BPR # 004331
> Immigration Law Offices of Elliott Ozment
> 1214 Murfreesboro Pike
> Nashville, TN 37212
> (615) 321-8888 (O)
> (615) 321-5230 (F)
> Email: elliott@ozmentlaw.com